THOMAS T. GRAYSON v. JOHN WILSON et al.

Where S. R. G., as the administratrix of S. M. G., loaned a certain amount of money of the estate upon which a judgment was rendered, and which was by said administratrix transferred to a third person, and afterwards she made a final settlement in the probate court of her administration of said estate, but subsequently T. T. G., a distributee of said estate, filed a bill to prevent the party to whom said judgment was transferred, from collecting it, the said T. T. G. claimed said amount of the judgment as his own. No fraud is charged against the administratrix in the transfer, or notice of the alleged misapplication on the part of the party to whom the judgment was transferred, nor does the bill seek to set aside the final settlement or a new account of the matters embraced in the settlement; but the charges that said administratrix is insolvent, and after her final settlement of the said estate, the said administratrix and T. T. G. were joint distributees of the estate, and she carried on the planting business with the joint property of the estate : — Held, that the rights of third parties cannot be affected or prejudiced by the transfer of the judgment, unless it clearly be made appear that the party (T. T. G.) claiming an interest in it, has ascertained and established his right against the administratrix in a proper legal forum.

S. R. G. was properly entitled to claim and control the judgment as her individual property until her final settlement shall be set aside, and it be made appear that she, as administratrix, has not accounted for that amount in her final account.

ON appeal from the middle district chancery court at Yazoo City; Hon. Selden S. Wright, vice-chancellor.

The facts of the case are contained in the opinion of the court.

*Potter* for appellant.

*N. G.* and *S. E. Nye*, for appellees,

Cited *Commercial Bank* v. *Lewis*, 13 S. & M. 231; *Fellows* v. *Harris*, 12 Ib. 465; *Jordan* v. *Black*, 2 Murph. 30; 1 Johns. Ch. 582; *Shotwell* v. *Webb*, 23 Miss. 375; Story's Eq. 300; 11 Wheat. 103; 1 Brow. 547; H. & M. 433; 1 Wash. 196; 1 Johns. Ch. 307; 9 Humph. 614; 11 Ves. 380; 4 How. 239.

*Yerger* and *Rucks,* on the same side,
Cited *Stubbefield* v. *McRaven,* 5 S. & M. 130.

Mr. Justice HANDY delivered the opinion of the court.

The substance of the bill in this case is, that the complainant is the son and sole heir of Spruce M. Grayson, who died intestate in the year 1839 and that the defendant, Sarah R. Grayson, is his widow, and administered upon his estate, which was large, and in the year 1843 settled her final account with the proper probate court, and was discharged from the administration, since which time she has raised and disposed of large crops of cotton, exceeding one thousand bales, the proceeds of the labor of the slaves of the estate, and has sold several of the slaves, for which she has never accounted to the complainant, and is now indebted to him in a large sum of money, and that there is not left a sufficient amount of property in specie to satisfy his distributive share of the estate ; that one William L. Chew, being indebted to the intestate in his lifetime, and also to his administratrix for money advanced by her to him of the assets of the estate, before making her final account, transferred to her a promissory note made by Augustine and Beverly Chew, indorsed by William L. Chew and others, in payment thereof, which note she afterwards transferred to Dick & Hill, who obtained judgment thereon in November, 1848, for $4,371.20 ; that Sarah R. Grayson afterwards became the owner of that judgment, and transferred it to the defendants, Wilson and Hyatt, as collateral security for an individual debt of hers, and that they have collected part of the money due upon it, and are proceeding to collect the entire amount of it ; that the note and judgment belong to the estate of the intestate, and that Sarah R. Grayson is insolvent. The prayer is for an injunction against Wilson and Hyatt from further proceedings to collect the money, for a decree for the sum already collected by them, and that the defendants in the judgment pay to the complainant the balance due thereon.

The bill was taken *pro confesso* against Sarah R. Grayson and the defendants in the judgment.

The answer of Wilson and Hyatt states that the judgment had

been transferred to Sarah R. Grayson, by Dick & Hill, who had taken the note as collateral security for a debt from her, which was paid; that afterwards she carried on the business of planting with the slaves of the estate belonging to herself and the complainant her son, the property being undivided, and became indebted to the respondents for rent of land, wages of overseers and plantation supplies, and for money advanced for the education of the complainant, and for the amount she drew bills, which were accepted by them, and at the same time transferred the judgment to them with the understanding that it should become their property if she did not pay the acceptances at maturity; that she failed to make payment, and they became entitled to the judgment, and claim it as purchasers for a valuable consideration, without notice of any claim or interest of the complainant; that the indebtedness for which the judgment was transferred was for the most part for benefit received to the complainant's use, three fourths of the slaves belonging to him, and the indebtedness having arisen from their being engaged in planting, and money supplied for his education; if the money alleged to have been loaned to Chew was loaned during the period of the administration, they insist upon the final settlement as a bar, and if loaned since, they state that the estate was worth $65,000 or $70,000, of which she was entitled to one fourth; that the money for which this note was given was among the first funds of the estate used by her, and being much less than she was entitled to, she had a right to apply such an amount to her individual use, and would have been allowed the same on settlement of her accounts. They further state that she has paid between $10,000 and $20,000 for the estate, for which she has received no allowance in the probate court, and that upon a fair settlement, the estate is indebted to her in a considerable sum; that she was also allowed the sum of $2,500 for commissions, as administratrix, which are not credited to her in her final settlement. The respondents also demur to the relief sought.

The facts stated in the answer appear to be established by testimony. On the final hearing the vice-chancellor dissolved

the injunction and dismissed the bill, and from that decree this appeal is taken.

The first question arising is, whether the bill shows a sufficient case to entitle the party to the relief sought.

It appears by the bill that the alleged act of maladministration, in loaning the money of the estate by the administratrix, took place before the settlement of her final account in the probate court. The bill does not seek to impeach or to set aside that settlement, nor does it seek a new account of the matters embraced in that settlement, nor an account against Mrs. Grayson in relation to the transactions pertaining to the property of the estate since that settlement. It is stated that she became the holder of the judgment founded on the note, subsequently to her final settlement, and transferred it to Wilson and Hyatt on account of her own debt. No fraud is charged against her, nor notice of the alleged misapplication on the part of Wilson and Hyatt. She may have accounted for the fund in her final settlement, and thus have had the right to control it to her own use; and it is a fair presumption that she did so, as it was then assets in her hands, and it is not pretended but that her final settlement was justly and legally made. Or she may be entitled to appropriate it to her own use upon a settlement of her accounts in relation to the management of the property in her hands since the final settlement, and in which she had an interest. If the alleged maladministration was embraced in her final settlement, it could only be reached by a proper proceeding to impeach that settlement; and if the complainant's right be founded on her misapplication of means in her hands since that settlement, and whilst the property was under her management, she having an interest in it, his right could only be properly ascertained by having an account of her management of the property. No effort is made by this bill to bring her to such an account, but the object of the bill is to deprive Wilson and Hyatt of the benefit of the judgment without taking such account, the result of which might be that they would lose their debt, when in fact she might have been fully justified in transferring the judgment to them, which might appear upon an

account being taken. Nor does her alleged insolvency obviate this objection. After her final settlement she had the possession and management of the property in which she and her son, the complainant, were jointly interested, and she carried on the business of planting with the joint property; and she can only be made liable for her dealing with the property upon an account of her acts being taken. Especially is this true in reference to the interest of third parties who have derived a right through her, without notice of any improper conduct on her part, and relying on the control which she had over the joint property. They undoubtedly cannot be prejudiced until it be clearly made to appear, that she has violated her authority, and that the party claiming an interest in consequence thereof, has ascertained and established his right against her in a proper and legal form.

We think, therefore, that the bill is insufficient, and that the demurrer should have been sustained.

Second. It appears by the testimony that the statements of the answer are substantially true. Among other things it is shown that the note on which the judgment in controversy was founded, was given to Mrs. Grayson for money of the estate loaned by her before her final settlement; and that in her accounts with the probate court she charged herself with all money that came to her hands as administratrix, which of course must include this money loaned. She, therefore, properly administered this portion of the assets, and was entitled to hold the note as her individual property; and until that settlement shall be set aside, her right to the note cannot be questioned, much less can the title of parties who have become the holders of it for value, and without notice. *Searles* v. *Scott*, 14 S. & M. 94. No such effort is made in this case, and nothing, therefore, is shown against her absolute right to the note and the judgment rendered upon it.

Upon the merits of the whole case, we are satisfied that the decree is correct, and it is accordingly affirmed.